IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM FOSTER BROWN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 20-050 (MN) |
| ) | |
| DETECTIVE JAMES C. ARMSTRONG, et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM OPINION</u>**

William Foster Brown, Jr., FCI Ray Brook, Ray Brook, New York. Pro Se Plaintiff.

June 12, 2020
Wilmington, Delaware

*[signature: Maryellen Noreika]*
**NOREIKA, U.S. District Judge:**

I.   **INTRODUCTION**

Plaintiff William Foster Brown, Jr. ("Plaintiff"), is housed at FCI Ray Brook in Ray Brook, New York, but at one time was held as a pretrial detainee at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. Plaintiff filed this action pursuant to 42 U.S.C. § 1983, appears *pro se*, and has been granted leave to proceed *in forma pauperis*.[1] (D.I. 1, 5). The Court proceeds to screen the Complaint (D.I. 1) pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

II.  **BACKGROUND**

On July 2, 2012, Plaintiff and his co-defendant were indicted on capital murder charges. *State v. Brown*, 2017 WL 1403328, at *1 n.2 (Del. Super. Ct. Apr. 10, 2017)[2] (citing *State v. Brown*, ID No.1108002188).[3] Plaintiff had been incarcerated at Federal Correctional Institution ("FCI") – Cumberland in Maryland on an unrelated conviction when he was indicted in Delaware. *Brown*, 2017 WL 1403328, at *1. On March 27, 2014, the State of Delaware filed a petition for writ of habeas corpus ad prosequendum to obtain Plaintiff from federal custody and, on March 31, 2014, a writ issued to federal authorities for Plaintiff's custody. *Id.* Before delivery of the writ to FCI-Cumberland, Plaintiff was moved to FCI-McDowell in West Virginia. *Id.* On May 7, 2014, the State lodged a detainer against Plaintiff with the Federal Bureau of Prisons. *Id.*

---

[1]  Plaintiff filed this action in the United States District Court for the District of New Jersey. It was transferred to this Court on January 14, 2020. (*See* D.I. 8, 9).

[2]  The Court can take judicial notice of the official record of prior court proceedings. *See McPherson v. United States*, 392 F. App'x 938 n.1 (2010).

[3]  The 2012 indictment charged Plaintiff and his co-defendant with the November 2005 murder of Angelo Panaccione who was scheduled to appear in court as a witness against Plaintiff in a burglary criminal case. *See State v. Brown*, 2016 WL 3356938, at *1 (June 2, 2016). Mr. Panaccione's home had been burglarized. *Id.* Mr. Panaccione was murdered on November 22, 2005, just a few hours before he was scheduled to appear in court. *Id.*

On July 29, 2014, the State requested, and the Court issued, a writ to FCI-McDowell. *Id.* On August 12, 2014, the State withdrew the detainer lodged against Plaintiff following a procedural request from FCI-McDowell who had asked the State to clear the detainer so that Plaintiff could be returned to Delaware pursuant to the writ. *Id.* at *2. The next day, August 13, 2014, Plaintiff returned to Delaware. *Id*.

On November 13, 2014, the State Court entered an order appointing conflict counsel and, during a March 2, 2015 conference, scheduled a trial date of October 4, 2016. *Id.* On February 8, 2016, Plaintiff moved to dismiss all counts of the indictment except for intentional murder based upon the expiration of the statute of limitations, and on March 15, 2016, the motion was granted except as to one count of intentional murder and two counts of felony murder. *Id.* at n.26. In mid-March 2016, Plaintiff joined his co-defendant's motion to dismiss on speedy trial and due process grounds, and the motion was denied. *Id.* After the State advised the Court that it had erred in representing that the Uniform Agreement on Detainers' ("UAD" or "IAD") time limits did not apply, Plaintiff filed a motion to dismiss for violation of the UAD. *Id*. at *3. On April 10, 2017, after concluding it had no discretion, the State Court granted Plaintiff's motion and dismissed with prejudice all remaining counts as mandated due to the State's failure to comply with the UAD. *Id.* at *8.

Plaintiff filed this action on April 8, 2019.[4] (D.I. 1). He alleges that following his July 2, 2012 indictment on capital murder charges, he "remained in limbo unsure of all but one

---

[4] The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule" that deems a prisoner's complaint filed as of the date it was delivered to prison officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). Plaintiff's Complaint was signed on April 8, 2019, and it was received by the Court on April 15, 2019. Therefore, the Court concludes that Plaintiff's Complaint

thing – that Delaware's law enforcement officials were going to attempt to murder [Plaintiff] with their (unconstitution) [sic] death penalty, false charges and fabricated evidence." (*Id.* at 7). Plaintiff alleges that on August 13, 2014, officials from the prosecutor's office officially placed him under arrest and took him into custody. (*Id.* at 7-8).

The Complaint alleges that Defendant detective James Armstrong ("Armstrong") "set out to conspire to falsify evidence", falsely arrest and falsely imprison Plaintiff knowing there was no evidence suggesting Plaintiff's involvement and there was no probable cause due to the omission of information from witnesses. (*Id*. at 4). The Complaint alleges that Defendants Delaware Deputy Attorney General Sean P. Lugg ("Lugg") and the Delaware Department of Justice ("DDOJ") conspired to prosecute Plaintiff in an attempt to wrongfully imprison Plaintiff while participating in an investigation that allowed them to cover up violations of Plaintiff's constitutional rights. (*Id*.).

The Complaint further alleges that the New Castle County Police Department ("NCC") violated Plaintiff's constitutional rights when it failed to train and supervise as evidenced by its willingness to arrest and imprison with an incomplete investigation, that it had a custom, policy or practice of initiating criminal processes without probable cause, and that it conspired to falsely arrest and falsely imprison Plaintiff without probable cause. (*Id.* at 5).

Plaintiff alleges that Armstrong, NCC, Lugg, and the DDOJ engaged in a conspiracy knowing that evidence/information provided by witnesses was altered, changed, falsified, omitted, and fabricated, yet continued with the wrongful prosecution of an innocent person. (*Id.* at 8). He alleges there was "absolutely" no evidence he was involved in any criminal activity. (*Id*.).

---

was filed on April 8, 2019, the date it was signed, and the earliest date possible that it could have been delivered to prison officials for mailing.

Plaintiff was in the custody of JTVCC for almost three years. He alleges that JTVCC John Doe Warden ("Warden Doe")[5] continued to hold him in custody for an additional seven days after April 10, 2017 when the indictment was dismissed with prejudice. (*Id*. at 6).

Plaintiff seeks compensatory and punitive damages. (*Id*. at 8).

## III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless"

---

[5] Presumably Plaintiff is referring to Phillip Parker who served as acting warden at JTVCC from February 2017 until Dana Metzger was named JTVCC warden in May 2017.

4

or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, however, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may

not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Eleventh Amendment

The DDOJ is immune from suit. The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007).

Accordingly, the DDOJ will be dismissed based upon its immunity from suit.

### B. False Arrest, False Imprisonment, and Conspiracy

Plaintiff alleges Armstrong, NCC, Lugg, and the DDOC conspired to falsely arrest and falsely imprison him. Plaintiff also alleges that NCC violated his constitutional rights when it failed to train and supervise through its willingness to arrest and imprison him with an incomplete investigation and that it had a custom, policy or practice of initiating criminal processes without probable cause.[6]

The Complaint alleges that Plaintiff was falsely arrested on August 13, 2014, and thereafter, falsely imprisoned. Delaware's two-year limitations period on personal injury actions, 10 Del. C. § 8119, applies to civil rights claims under § 1983. *See Day v. Toner*, 530 F. App'x 118, 121 (3d Cir. 2013). The false arrest, false imprisonment, and conspiracy to falsely arrest and falsely imprison claims are barred by the applicable statute of limitations.[7] *See Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998).

Plaintiff's Fourth Amendment and conspiracy claims accrued when he appeared before a magistrate and was bound over for trial or arraigned on charges. *See Wallace v. Beto*, 549 U.S. 384, 389-392 (2007). His imprisonment did not toll the running of the statute of limitations. *See Hughes v. Smith*, 264 F. Supp. 767, 769 (D.N.J. 1967), *aff'd,* 389 F.2d 42 (3d Cir. 1968); *Montgomery v. DeSimone*, 159 F.3d at 126 ("A claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more.") (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)); *Johnson v. Mondrosch*, 586 F. App'x 871, 873 (3d Cir. 2014) (false imprisonment claims accrue "when legal

---

[6] To the extent Plaintiff alleges he was arrested without probable cause or that the criminal process proceeded without probable cause, indictment by a grand jury generally constitutes prima facie evidence of probable cause. *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). In addition, given the dates of Plaintiff's indictment and arrest, the claims are time-barred.

[7] The claim that NCC failed to conduct a complete investigation is discussed below.

7

process was initiated against" the plaintiff); *LeBlanc v. Snavely*, 453 F. App'x 140, (3d Cir. 2014) ("a claim of false imprisonment accrues when a person is detained without legal process [the claims ends once that person is held pursuant to legal process such as when a person is bound over by a magistrate or arraigned on charges]") (citing *Wallace*, 549 U.S. at 389-90)).

Plaintiff alleges that he was arrested on August 13, 2014 when he was returned to Delaware. It is evident from the face of the pleading that the false arrest claim is time-barred. The date that Plaintiff was arraigned or otherwise bound over for trial is not in the record. It is reasonable to conclude, however, that Plaintiff was arraigned before he was appointed conflict counsel on November 13, 2014, before the October 4, 2016 trial date was set, and before Plaintiff filed his February 8, 2016 motion to dismiss and the motion to dismiss for violations of the UAD.[8]

Plaintiff commenced this action more than four years after he was returned to Delaware in August 2014. His Complaint was filed in April 2014, well after the limitations period had expired and thus his Complaint is time-barred. Accordingly, the false arrest and false imprisonment claims will be dismissed. In addition, because the conspiracy to falsely arrest and falsely imprison claim is premised upon the false arrest and false imprisonment claims, those conspiracy claims must be dismissed. *See Watlington on behalf of FCI Schuylkill African American Inmates v. Reigel*, 723 F. App'x 137, 141 (3d Cir. 2018).

### C. Malicious Prosecution and Conspiracy

Plaintiff alleges both malicious prosecution and that Lugg and the DDOJ conspired to maliciously prosecute Plaintiff in an attempt to wrongfully imprison him. To plead a claim for

---

[8] The filings do not indicate the precise date that Plaintiff filed motion to dismiss for violations of the UAD. He clearly filed it prior to January 23, 2017, when the Superior Court submitted its decision and April 10, 2017 when it decided the matter. *See State v. Brown*, 2017 WL 1403328 at *1.

malicious prosecution, a plaintiff must show that: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See Kossler v. Crisanti,* 564 F.3d 181, 186 (3d Cir. 2009); *see also Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013).[9]

A favorable termination "must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the law suit." *Kossler v. Crisanti*, 564 F.3d at 188 (quoting 52 Am.Jur.2d Malicious Prosecution § 32 (Supp. 2007)); *see also Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000) (a § 1983 malicious prosecution plaintiff "must be innocent of the crime charged in the underlying prosecution.").

Plaintiff alleges that he received a "favorable termination" when all criminal charges were dismissed with prejudice on April 10, 2017. (D.I. 1 at 5, 7). He alleges, without supporting facts, that there was no evidence suggesting his involvement in the crimes with which he was charged. The Court must take judicial notice that upon finding it had no discretion based upon Supreme

---

[9] There are six elements in an action for malicious prosecution under Delaware law:

(1) There must have been a prior institution or continuation of . . . [a criminal] proceeding against the plaintiff . . . .
(2) Such former proceedings must have been by, or at the instance of the defendant in [the] action for malicious prosecution.
(3) The former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution.
(4) There must have been malice in instituting the former proceedings.
(5) There must have been want of probable cause for the institution of the former proceedings.
(6) There must have been injury or damage resulting to the plaintiff from the former proceedings.

*Megenhardt v. Nolan*, 583 A.2d 660 (Del. 1990) (citing *Stidham v. Diamond State Brewery*, 21 A.2d 283, 284 (Del. Super. Ct. 1941)).

9

Court precedent, the Delaware Superior Court held that dismissal with prejudice was mandated due to the State's failure to comply with the UAD.[10] Despite Plaintiff's allegations that there was a favorable termination of the criminal case, the Superior Court's decision does not indicate that the criminal case was disposed of in a way that indicates Plaintiff's innocence and, therefore, he has not stated a malicious prosecution claim under § 1983. *See Morris v. Verniero,* 453 F. App'x 243 (3d Cir. 2011) (holding that Attorney General's decision to dismiss criminal prosecution against Morris was not a favorable termination where the New Jersey State Police were under scrutiny for using racial profiling in traffic stops and the Attorney General stated that it was too difficult to discern whether this case involved intentional targeting of minorities where other drug courier profile-related factors existed to justify the stop on the turnpike); *Donahue v. Gavin,* 280 F.3d 371 (3d Cir. 2002) (holding that a prosecutor's decision to dismiss a case in the interest of judicial economy did not constitute a favorable termination). *See also Cordova v. City of Albuquerque* 816 F.3d 645, 651-54 (10th Cir. 2016) (finding that assault charges dismissed on speedy trial grounds after a series of procedural blunders by the prosecution and underlying

---

[10] In granting the motion, the Superior Court noted as follows:

> The Court recognizes the gravity of this consequence because a defendant who may be guilty of a very serious crime will go free. But this is the consequence required by law. The Court simply has no discretion to rule otherwise. *See Birdwell v. Skeen*, 765 F. Supp. 1270, 1275 (E.D. Tex. 1991), *aff'd*, 983 F.2d 1332 (5th Cir. 1993) ("Non-discretionary dismissal with prejudice of all pending charges against a defendant is a severe sanction, and evidences a strong desire to ensure prompt disposition of cases. It seems highly unlikely that forty-six states, the United States, and the District of Columbia would agree to such an absolute penalty without carefully considering both the penalty and the importance of the time limit. In light of the scrutiny that must have been visited upon [provisions of] the IAD, they shall be assumed to mean exactly what they say.").

*State v. Brown*, 2017 WL 1403328 at n.104.

10

charges dismissed on technical, procedural grounds which had nothing to do with the merits of the case, were not indicative of innocence, and dismissal did not qualify as a favorable termination).

Plaintiff's claim does not meet the elements required to state a claim for malicious prosecution. Accordingly, the claim will be dismissed. Because the conspiracy claim against Lugg and the DDOJ is premised on malicious prosecution, it also must be dismissed. *See Watlington on behalf of FCI Schuylkill African American Inmates v. Reigel*, 723 F. App'x 137 at 141.

### D. Conspiracy to Falsify Evidence

Plaintiff alleges two additional conspiracy claims. First, that detective Armstrong conspired to falsify evidence when he falsely arrested and falsely imprisoned Plaintiff knowing there was no evidence that suggested Plaintiff's involvement or that indicated probable cause when witness information was omitted. (D.I. 1 at 4). Second, Plaintiff alleges that Armstrong, NCC, Lugg, and the DDOC engaged in a conspiracy when these Defendants participated in the investigation and they knew, or should have known, that the investigation was being orchestrated through the prosecutor's office, and that it was clear that evidence/information provided by witnesses was altered, changed, falsified, omitted, and fabricated, yet the Defendants continued with the wrongful prosecution of Plaintiff. (*Id*. at 8).

To state a conspiracy claim under § 1983, Plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Gannaway v. Berks Cty. Prison*, 439 F. App'x 86, 93 (3d Cir. 2011). "[T]he linchpin for conspiracy is agreement." *Id*. (quoting *Bailey v. Board of Cty. Cmm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992).

11

Both conspiracy claims are deficiently pleaded. The Armstrong conspiracy claim (D.I. 1 at 4) does not indicate with whom Armstrong conspired. This is fatal to the claim given that a conspiracy require more than one person.

As to the conspiracy claim raised against Armstrong, NCC, Lugg, and the DDOC, there are no facts that speak to the time-frame of the alleged conspiracy. Nor does the Complaint indicate where the alleged conspiracy occurred. Also, nothing in the Complaint describes the actions or inactions of each of the foregoing Defendants during the course of the alleged conspiracy. In addition, the Complaint does not allege that the foregoing Defendants had an agreement, implicit or otherwise, to deprive Plaintiff of his federal rights.[11] Indeed, Plaintiff alleges that Defendants "knew or should have known" about the falsified evidence, not that Defendants had an agreement to falsify evidence. The pleading is inadequate because it fails to allege facts that give rise to a plausible claim for relief. *See Hudson v. City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007). The Court is left to guess when, how, or what type of actions or inactions may have been taken by the foregoing Defendants. Without such factual allegations, it is impossible to determine whether the foregoing Defendants conspired to deprive Plaintiff of any constitutional rights. *See Iqbal*, 556 U.S. at 679.

Accordingly, the conspiracy claims to falsify evidence will be dismissed. Plaintiff will be given leave to amend the conspiracy to falsify evidence claims.

### E. Municipal Liability

Plaintiff also alleges that NCC violated his constitutional rights when it failed to train and supervise as seen by its willingness to arrest and imprison him with an incomplete investigation.

---

[11] The deficiencies described apply equally to the Armstrong conspiracy claim.

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990). Although a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews,* 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of the County Comm's v. Brown,* 520 U.S. 397, 404 (1997).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). When the policy concerns an alleged failure to train subordinate officers, liability will lie only where a constitutional violation results from deliberate indifference to the constitutional rights of persons with whom the officer comes into contact. *Grazier v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003).

Similar to the other claims, the municipality claim is conclusory with no facts to support it. The allegations do no indicate when or where the alleged wrongful conduct occurred, do not describe how the investigation was inadequate, and do not allege deliberate indifference by any NCC individual. Therefore, the municipality claim against NCC will be dismissed. Plaintiff will be given leave to amend the conspiracy to falsify evidence claims.

### F. Over Detention

The Complaint alleges that Warden Doe continued to hold Plaintiff, a pre-trial detainee, in custody for seven days following the April 10, 2017 dismissal of the indictment. The Court liberally construes the claim as an over detention claim.

The treatment of pre-trial detainee claims is governed by the Due Process Clause. *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). For sentenced inmates, Third Circuit "has always analyzed over-detention claims under the Eighth Amendment . . . ." *Id.*; *but see Barnes v. District of Columbia*, 242 F.R.D. 113, 118 (D.D.C. 2007) (stating that most courts that have considered over-detention claims have agreed that they are properly channeled through the Due Process Clause of the Fourteenth Amendment). In analyzing over-detention claims made by pretrial detainees, the Third Circuit has stated that there is no applicable provision more specific than the Due Process Clause, and, although acknowledging that the protections of the Eighth Amendment and Due Process Clauses are sometimes the same, declined to examine the differences between those two analyses in the context of over-detention. *Id.*

In applying the Eighth Amendment, the Third Circuit has established a three-part test for over-detention claims. A plaintiff must show: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. *Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir 2010).

There are no allegations or facts that Warden Doe knew that Plaintiff's criminal indictment has been dismissed with prejudice, that Warden Doe failed to act (given there are no allegations

14

that he had knowledge) or of causal connection. In addition, to the extent Warden Doe is named based his supervisory position the claims fails because there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

The claim is deficiently pleaded and will be dismissed. Plaintiff will be given leave to amend the claim.

## V. CONCLUSION

For the above reasons, the Court will: (1) dismiss all claims against the Delaware Department of Justice based upon its immunity from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and 1915A(b)(2); (2) dismiss the false arrest, false imprisonment and conspiracy to falsely arrest and falsely imprison as time-barred and legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and 1915A(b)(1); (3) dismiss the malicious prosecution and conspiracy to maliciously prosecute claims as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and 1915A(b)(1); (4) dismiss the conspiracy to falsify evidence claims for failure to state claims upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1); (5) dismiss the municipal liability claims against the New Castle County Police Department for failure to state claims upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1); (6) dismiss the over detention claim against Warden Doe for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1); and (7) give Plaintiff leave to amend the conspiracy to falsify evidence, municipality liability, and over detention claims.

An appropriate Order will be entered.